IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY NASELLO, KATHERINE STEPHENS, VIRGINIA AYDELOTTE, KAREN S. STANFORD, RALPH HERMAN LAKE, BERT LOUIS MESTEL, BECKY A. LONG, JULIA A. BAKER, LUCY M. EMERICK, and DELORES E. O'DEAR, individually and as the representatives of a class of similarly situated persons,<br><br>          Plaintiffs,<br><br>   v.<br><br>THERESA A. EAGLESON, in her official capacity as Director of the Illinois Department of Healthcare and Family Services, and GRACE B. HOU, in her official capacity as Director of the Illinois Department of Human Services,<br><br>          Defendants. | Case No. 18 C 7597<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Mary Nasello, Katherine Stephens, Virginia Aydelotte, Karen S. Stanford, Ralph Herman Lake, Bert Louis Mestel, Becky A. Long, Julia A. Baker, Lucy M. Emerick, and Dolores E. O'Dear have brought a four count amended putative class action complaint against defendants Theresa A. Eagleson, Director of the Illinois Department of Healthcare and Family Services and Grace B. Hou, Director of the Illinois Department of Human Services, alleging that defendants have violated the Medicaid Act, 42 U.S.C. § 1396a(a)(17)(B), the Due Process Clause of the Fourteenth Amendment, the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. and the Rehabilitation Act, 29 U.S.C. § 701 et seq., and the Supremacy Clause by failing to deduct plaintiffs' pre-eligibility medical expenses when calculating their income for purposes of

determining their patient pay amount for long term care.   Count I seeks a declaration that defendants' practice of refusing to allow what plaintiffs interchangeably call "deviated liability" or "deviated income" of non-covered medical expenses incurred prior to eligibility for Medicaid benefits for Illinois nursing home residents violates the Medicaid Act, and an order that defendants   adopt a process by which they will bring the calculation of patient liability into compliance with federal law.   Count II alleges that defendants are violating Medicaid's "reasonable promptness" requirement, 42 U.S.C. § 1396a(a)(8).   Count III alleges that defendants' actions violate the ADA and Rehabilitation Acts.   In Count IV, plaintiffs seek a temporary and permanent injunction.   Defendants have moved under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim.   For the reasons discussed below, defendants' motion is granted.

## BACKGROUND

Plaintiffs are all nursing home residents with serious medical conditions that require 24-hour medical care.   Although not providing any specifics, the complaint alleges that each plaintiff has one or more medical conditions that substantially limits one or more major life activities.   Plaintiffs are all financially needy, falling within the requirements for Medicaid assistance.   Each has been approved for Medicaid Long Term Care Benefits.   Each had incurred medical expenses prior to becoming eligible for Medicaid and for which they remain financially liable.   They claim that under Medicaid regulations these "prior" expenses should be offset from the calculation of their income for purposes of determining the amount they must contribute to the cost of their nursing home care.

**DISCUSSION**

Defendants have moved to dismiss the complaint for failure to state a claim. Such a motion challenges the sufficiency of the complaint, not its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). The court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiffs' favor. Sprint Spectrum, L.P. v. City of Carmel, Indiana, 361 F.3d 998, 1001 (7th Cir. 2004). A complaint must allege sufficient facts, that if true, would raise a right to relief above the speculative level, showing that the claim is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 549, 555 (2007). To be plausible on its face, the complaint must plead facts sufficient for the court to draw the reasonable inference that defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The Medicaid program was established in 1965 as Title XIX of the Social Security Act. See Social Security Amendments of 1965, Title XIX, Pub. L. No. 89-97, 79 Stat. 286, 343-53 (codified as amended at 42 U.S.C. § 1396a). It was designed to provide financial assistance to persons whose income is insufficient to meet the costs of medical care. It functions as a partnership between the federal government and the states. Miller v. Olszewski, 2009 WL 5201792 (E.D. MI Dec. 21, 2009); 42 U.S.C. § 1396a(a)(10). As part of the program, states provide payment for certain medical and nursing home expenditures using a mix of both federal and state funds. In return for the use of federal funds, the state agrees to comply with the Medicaid statute and any administrative regulations promulgated by the Centers for Medicare and Medicaid Services ("CMS"), the federal agency charged with providing program oversight.

Maryland Dept. of Health and Mental Hygiene v. Centers for Medicare and Medicaid Services, 542 F.3d, 424, 426 (4th Cir. 2008); 42 U.S.C. § 1396a(a)(1).

Medicaid permits two basic categories of applicants to receive medical assistance. 42 U.S.C. § 1396a(a)(10). The first, "categorically needy," are applicants whose low income alone qualifies them to receive Medicaid benefits. The second, "medically needy," are applicants "who have become impoverished through medical expenditures; while they have sufficient income to afford basic living expenses, they cannot afford expensive medical care." Maryland Dept. of Health and Mental Hygiene, 542 F.3d at 429; 42 U.S.C. § 1396a(a)(10).

Congress has delegated to CMS "exceptionally broad authority to promulgate regulations determining the extent of income and resources available to medically needy applicants and recipients. Id.; 42 U.S.C. § 1396a(a)(17). "If a medically needy applicant's pre-eligibility income exceeds the Medicaid limit, CMS regulations direct states to deduct incurred medical expenses in order to reduce that income to the Medicaid eligibility level." Id. (citing 42 C.F.R. § 435.831(d)). The regulations term this the "spenddown" process and require states to calculate the amount of "countable income" medically needy applicants must "spenddown" before Medicaid will cover their medical expenses. Id.

To determine an applicant's countable income, states first subtract certain standard deductions from gross income. Id. If that amount equals or is less than the state income standard, the applicant is deemed eligible for Medicaid benefits. Id.; 42 C.F.R. § 435.831(c). If the amount exceeds the state income standard, the applicant may become eligible for benefits by "spending down" incurred medical expenses to meet the state eligibility standard. Id. Incurred medical expenses are defined as any medically necessary expenses for which an

4

applicant would otherwise be liable. 42 C.F.R. § 435.831. States are required by CMS to deduct expenses that the applicant is repaying either at the time of application or that were incurred within three months prior to the filing of the application. Maryland Dept. of Health and Mental Hygiene, 542 F.3d at 429. If this adjusted income, determined after completion of the spenddown process, is reduced to below the threshold level, the applicant is deemed eligible for Medicaid benefits, such as nursing home care. Id.

Nursing home residents receiving Medicaid benefits who have income remaining after the spenddown process, such as the instant plaintiffs, are required by CMS to contribute that income to the nursing home to defray the cost of their care. Id.; 42 U.S.C. § 1396a(a)(17). To determine the amount of income a nursing home resident has after becoming Medicaid eligible, states must calculate what CMS terms the "post-eligibility contribution to care." Id.

The post-eligibility contribution to care amount is calculated by a process similar to the spenddown process. First, the state determines the resident's total income including income disregarded during spenddown. From that is subtracted any "incurred medical expenses" deducted during spenddown. If there is available income remaining, CMS assumes the resident will use it to defray room and board costs and directs states to subtract that amount from Medicaid's payment to the nursing home. Id.; 42 C.F.R. 435.725(a). "Thus, during the post-eligibility process, CMS's regulations require states to deduct incurred medical expenses in the same manner as they deducted those expenses during the spenddown process." Id. at 430.

By providing these deductions from total income to reach post-eligibility contribution to care, Medicaid permits recipients receiving long term care to have sufficient income to pay for medical services that are necessary to their health, but are not paid by Medicaid under the state's

5

plan. Miller, 2009 WL 5201792 at *3. As a result, if a recipient nursing home resident requires podiatry, chiropractic or dental care that are not covered items under the state's plan, the actual costs of those items will be deducted from the recipients' otherwise required contribution to the cost of care amount, so the recipient would retain this part of the income to pay for those medically necessary non-covered items. Id.

Among the deductions allowed when determining post-eligibility contribution to care are those for the recipients' "incurred expenses for medical or remedial care that are not subject to payment by a third party, including – necessary or remedial care recognized under State law but not covered under the State plan under the subchapter, subject to reasonable limits the State may establish on the amount of these expenses." 42 U.S.C. § 1396a(r)(1)(A)(ii). In the instant complaint, plaintiffs claim that defendants have not properly deducted their incurred medical expenses when calculating their post-eligibility cost of care. In particular, plaintiffs claim defendants are violating the Medicaid Act by not deducting their pre-eligibility nursing home expenses.

In Count I, plaintiffs seek a declaration that defendants' "practice of refusing to allow deviated liability of non-covered medical expenses incurred prior to eligibility for Medicaid benefits for Illinois nursing home residents with substantial impairment to one or more major life systems is in violation of federal Medicaid law." The count fails to identify which provision of the federal law is violated, and, as defendants point out, the Declaratory Judgment Act "provides only a form of relief, not an independent claim for relief." Keesler v. Electrolux Home Products, Inc., 2016 WL 3940114 * 3 (N.D. Ill. July 21, 2016).

6

Plaintiffs appear to be attempting to bring a private action to enforce § 1396a(a)(17) and/or § 1396a(r)(1)(A), either directly or pursuant to 42 U.S.C. § 1983. Neither provision, however, allows a private right of action.

"[P]rivate rights of actions to enforce federal law must be created by Congress. Alexander v. Sandoval, 532 U.S. 275, 286 (2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a remedy." Id. Thus, statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons." Id. at 289. For a statute to create private rights, its text must be "phrased in terms of the person benefitted." Gonzaga University v. Doe, 536 U.S. 273, 284 (2002).

A similar analysis is used to determine whether a statute is enforceable under § 1983. Id. at 285. "[I]f Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms – no less and no more than what is required for Congress to create new rights enforceable under an implied right of action." Id. at 290. "Section 1983 provides a remedy only for deprivation of `rights, privileges, or immunities secured by the Constitution and laws' of the United States. Accordingly it is <u>rights</u>, not the broader or vaguer `benefits' or `interests' that may be enforced under" that section. Id. at 283. And, spending clause statutes, such as the Medicaid Act, rarely give rise to privately enforceable rights, because such legislation is generally enforced administratively, including by potential termination of funding. Id. at 79-81.

With respect to the statute at issue, because both sections are phrased in terms of what a state must do, rather than any individual benefitted, neither is privately enforceable. Section

1396a(a)(17), the "reasonable standards" requirement, provides that a state plan for medical assistance must include reasonable standards for determining eligibility for and the extent of medical assistance. It lacks any individually focused rights creating language. For this reason, numerous courts have held that it is not privately enforceable. See e.g., Hobbs v. Zenderman, 579 F.3d 1171, 1181-83 (10th Cir. 2009); Watson v. Weeks, 436 F.3d 1152, 1162-63 (9th Cir. 2006); Lankford v. Sherman, 451 F.3d 496, 509 (8th Cir. 2006).

The analysis is similar for § 1396a(r)(1)(A), which supplements § 1396a(a)(17), which is not privately enforceable. Section 1396a(r)(1)(A) provides that "[f]or purposes of Section[ ] 1396a(a)(7) . . . with respect to the post-eligibility treatment of income of individuals who are institutionalized or are receiving home or community based services . . . there shall be taken into account amounts for incurred expenses for medical or remedial care that are not subject to payment by a third party including . . . necessary medical or remedial care recognized under State law but not covered under the State plan under this subchapter, subject to reasonable limits the State may establish in the amount of these expenses." Again, like § 1396a(a)(17), this provision focuses on the person regulated and contains no language creating any individual rights. As a consequence, the court concludes that there is no private right of action under the statute, and Count I is dismissed.

In Count II, plaintiffs attempt to assert a claim under § 1396a(a)(8), which requires a state plan to "provide that all individuals wishing to make an application for medical assistance under the plan shall have the opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 1396a(A)(8).

8

As defendants note, courts have held that this section is privately enforceable, but plaintiffs' complaint contains no allegation that any of them have been denied any medical assistance. To the contrary, the complaint alleges that plaintiffs have applied for benefits and that their benefits have been approved. They complain about the costs of those benefits, not that the benefits have not been furnished promptly. Count II fails to state a claim.

In Count III, plaintiffs allege that defendants have violated the ADA and Rehabilitation Acts by failing to inform plaintiffs of their right to an off-set and by failing to provide sufficient time to comprehend and challenge defendants' failure to off-set income. Title II of the ADA and § 504 of the Rehabilitation Act prohibit discrimination against an individual because of his or her disability. Analysis under each act is essentially the same. To state a claim, plaintiffs must allege that they each: (1) have a disability as defined by the ADA; (2) are otherwise qualified to receive the benefits sought; (3) they were denied those benefits on the basis of their disability; and (4) defendant is a public entity. Torrence v. Advanced Home Care, Inc., 2009 WL 1444448 at * 3 (N.D. Ill. May 21, 2009).

Although the complaint is vague as to plaintiffs' physical or mental conditions, the court assumes that each qualifies as having a disability as defined by the ADA. Their complaint fails to plead, however, that defendants' actions were taken because of or on the basis of their disabilities. Again, the crux of plaintiffs' complaint is that defendants failed to follow federal Medicaid law when calculating post-eligibility income. Nothing in the complaint alleges or, more importantly, raises a right to relief above the speculative level, that the state calculates post-eligibility income differently for individuals with a disability than it does individuals without a disability.

Plaintiffs argue that they have stated a claim based on their allegation that they were not given adequate time to appeal the determination of their income. The complaint fails to allege, however, that any of the plaintiffs attempted to appeal, sought and was denied and extension of time to do so, of what sort of modification of the appeal process they would need. Indeed, neither the complaint nor plaintiffs' briefs cite to the Illinois statute or regulation that sets forth the appeal process. Consequently, the court concludes that the complaint fails to plausibly allege that plaintiffs have been discriminated against in any way based on their alleged disabilities. As a result, Count III is dismissed.

Finally, because plaintiffs have not alleged a substantive violation of federal law, Count IV, which seeks injunctive relief, is also dismissed.

## **CONCLUSION**

For the reasons stated above, defendants' motion to dismiss [22] is granted.

**ENTER:** October 8, 2019

_____
**R**obert W. Gettleman
**United States District Judge**